Mr. Chief Justice, and may it please the Court, the question here is whether Mr. Abouammo committed his Section 1519 offense in San Francisco. In Section 1519, Congress created a broad, document-integrity offense distinct from obstruction that requires no communication, no obstructive effects, and no investigation. Under that broad law, Mr. Abouammo's offense started and ended in a 30-minute window during which he never left his home in Seattle. He was guilty, and his offense was complete the moment he finished creating the false invoice with the requisite intent. Whether he sent it to investigators, whether it affected them in some way, or whether an investigation even existed at all, none of that is relevant to liability under the statute. So the government didn't have to charge any of that in the indictment or prove any of it at trial. But the government now wants to have it both ways. It says the uncharged, unproven effect of Mr. Abouammo's offense means that he committed it in San Francisco. That is wrong. From the common law through the founding era and up through this Court's decisions in Cabrales and Rodriguez-Moreno, venue has always turned on the location of the offense's essential conduct. That is the question that this Court's venue cases all ask, even if not always in so many words. Here, Section 1519 has one essential conduct element, falsification, and Mr. Abouammo did that entirely in Seattle. Sending the document to investigators may have been evidence of his intent, but it was not essential for conviction, so it cannot support venue. In arguing to the contrary, the government relies on general, out-of-context language from cases addressing very different offenses, and it all but ignores Johnson, Cabrales, and the ratification-era understanding of where similar offenses were committed. With no grounding in statutory elements or text, the government's rule is unclear and unworkable, and accepting that rule for the government's own convenience would swallow the test this Court has always applied. I welcome the Court's questions. So are you saying that if he simply saved the draft to his computer, that the crime would have been complete? Yes, exactly, Your Honor. So how is that? The crime is knowingly falsifying a document with the intent to impede an investigation. The moment he saved the document on his computer, he had done all three of those things. Even if he had never sent it to anyone, if he had thought better of it, if he had deleted it, at that point, all of the elements were satisfied, and the offense was completed, and it was over. And that is vital for purposes of venue, because that's the scope of the inquiry that the Court applies. It asks, where did the defendant engage in the essential conduct elements of the offense, to use Rodriguez-Moreno's phrasing? In other words- How do you prove intent? If he didn't send it and never intended to send it, you're defeating your own argument. So if he hadn't sent it, then certainly the government would have a much harder time proving intent. But just as a matter of statutory text and elements, if he had created the document intending to send it to investigators with the hope of impeding the investigation, and then if he had thought better of it in that moment, say, and he thought, this is a terrible idea, what am I doing? And he had deleted the document, he would still have violated the statute, and his offense would be over at that point. The text of this provision is clear as to this, and I don't think the government actually to dispute any of that, by the way. Congress knows how to write an obstruction statute that actually requires some sort of obstructive effect, some sort of nexus with the investigation or the proceeding, and Congress very deliberately didn't do that in Section 1519 because it wanted to capture a broader scope of conduct. Responding to the Enron and Arthur Anderson document shredding and cooking the books, Congress said, we want to be sure that we're sweeping in conduct taken in contemplation of an investigation, even if one does not actually exist yet. And so to that extent, the government actually benefits from the statute's scope because it doesn't have to prove actual communication to investigators or obstructive effects, and those are therefore not elements of the statute that are required for conviction. Counsel, can I ask you a question? Is there any other, it just seems very bizarre to me, is there any other body or statutes that are like that? I mean, the guy does whatever it is to create the document, and he says, oh, that's a crazy idea, and tears it up, you're going to prosecute him? So practically speaking, of course, it would be relatively difficult for the government to learn about that in the first place, but I think the specific scenario that Congress had in mind when it wrote the statute is illuminating, and that is the Enron scandal. And there, not only were Enron and Arthur Anderson shredding documents, which of course doesn't involve any communication with anybody by definition, but they also were keeping a second set of records, not because they had any specific intention of investigators ever seeing them, I'm quite sure they hoped that that was never going to happen, but essentially it was just in case. And so Congress quite deliberately severed the nexus between an actual proceeding, because the statute doesn't even require that there be an investigation or a proceeding, and the conduct. Well, but I mean, that's a huge conspiracy, you know, affecting all sorts of different people and operations. You're suggesting the same rule would apply in the case that I gave. Somebody who, you know, drafts up a falsification, thinks better of it, tears it up, I mean, how much time is he facing for that? I don't remember offhand what the maximum is, Your Honor, but it just is a matter of statutory elements. That's what the text says. And again, I... Have courts actually applied it in that way? I don't know... I mean, if you look around the universe of 1519 prosecutions, what are the, you know, what might be considered the fringe cases? I don't know offhand of a case in which a court has ever considered a scenario where someone just created a document with the intent of impeding the investigation and then never did anything further than that, presumably because, practically speaking, it's going to be quite difficult for the government to find out about that. But just, again, if you just turn back to the text, knowingly falsifies a document with the intent to impede. Those are the three elements. That's all you have to do. And that is what Mr. Abdullamo did. Okay, but if that's... Let's just imagine that it did require, just work with me here, let's assume that it did require some kind of communication. The agency... The agents were in his house, right? They were downstairs. Let's imagine instead of emailing it, he handed it to them. You would still say that all the offense conduct happened in his home in Washington. Absolutely, yes. Okay. How does it change matters? Again, just assuming that some kind of communication of the document is required, that he emailed it to them, so he could just say, for convenience, I'm just going to go ahead and email you the document as an attachment rather than physically handing it over. In your view, would that change... How might that change matters, if at all? I don't know that those scenarios are any different. Assuming that there is some sort of communicative element in the statute, handing a piece of paper to someone versus emailing it to them, I think, is communicating to the same extent. And so, in either of those cases... So, we don't have to worry anything about a server, this is, you know... It's going to their San Francisco server and their computer there and living on it in some way, right? No, you do not have to worry about that, both because as a legal matter, the conduct would be the same, and also because there is no evidence in the record about where the government's servers actually are or were. The government, I think, is hoping that you'll assume that the servers are in San Francisco, but that was never asserted at trial, there's no evidence of it. Okay. So, you don't understand, and obviously we can ask Mr. Yang, that's when he stands up, but you don't understand the government to be contesting your interpretation of the statute and that only the creation of a document is required even if you put it in a drawer and never communicate it to anyone. I do not understand the government to contest that, no. And is that because, and I'll ask the government this, but is that because both of you are focused on the statutory elements, not so much what the facts were in this particular case about how he transmitted the document, but what the statute requires, and that's what we should be focused on in determining venue. That is exactly right, Your Honor. This Court's venue cases have always asked, where did you commit the elements of the statutory offense necessary for guilt? In other words, where did you commit the actus reus of the offense? So these questions about, boy, that's a weird offense and a strange actus reus, really, it seems to me, is dispositive of our consideration here. We have to look at the statute and determine what its actus reus is. And so you say it is falsifying a record with the intention that it impede an investigation, but both of those things, the falsifying the record and presumably the intention, occurred in Seattle in this case, and so that's why I think you're saying Seattle is the appropriate venue. That is exactly right, Your Honor. And cases like Cabrales are a perfect illustration of this. In Cabrales, the Court emphasized that we're not asking, in a broad sense, what did you do in a sort of related factual way? We're looking at the specific statutory proscription that Congress enacted, and then we're asking, how did the defendant violate it, and where did they do so? So in Cabrales, it was irrelevant to venue that she also had engaged in a drug distribution conspiracy in Missouri, for which she was also going to be prosecuted no matter what, and that she had been physically present in Missouri for various parts of that scheme, or even that she had to know, for the substantive money laundering counts, that the money was the proceeds of a specific other offense, which was the criminal conspiracy in Missouri. The Court asked simply, where did she actually commit the acts that constitute the money laundering offense? The acts or the elements? Is it all elements, or is it some subset of elements? So the way the Court has framed it is essential conduct elements, which I take essentially to mean the actus reus. None of the Court's cases seem to treat intent as part of the venue analysis for these purposes, but I don't know that that would make a difference, even if you looked at the intent element, as Justice Jackson said. Do you think that there's a reason to treat those two things differently? I think, historically, commission has been about acts. If you go all the way back to the common law cases or the ratification era cases, the Court is generally looking at acts or actions, conduct, in the sense of the actus reus. And I don't know of any example that does look to an intent element. But even if you do, I don't think it changes anything here, because if the intent element was committed anywhere, it was committed where he was. It was committed in Seattle. Counsel, we have the government's late-breaking argument that there's a separate metadata document that was created in San Francisco. I know you argue that that's forfeited. I wonder whether you would actually be better off having the Court address that, though, because one can imagine that we say it's forfeited in this case, while in every 1519 case to follow, the government's going to say, oh, we have a separate new document with different metadata in our offices, and that changes everything. So we'll be right back here. Thoughts? So, forfeiture aside, Your Honor, I think that argument has got real problems, both legally and factually. Factually, you don't just have to create or falsify a document to commit the actus reus. You have to do so knowingly. And there is absolutely no evidence in the record here at all that Mr. Abuamo knowingly created a copy of a document anywhere, much less in San Francisco, because, as Justice Barrett and I were discussing, there's no evidence about where the server even was. But if you get past all of that, then you get to the legal question. I'm not aware of any support for the government's position that just emailing a copy of an existing false record to someone is a separate act of falsification that can violate the statute. The best analog that we've found is the Sixth Circuit case that's cited in our reply, which says that at least for Section 1001 purposes, faxing and mailing two copies of a false statement are not two separate violations, because there's no additional falsehoods or false content. And I think that's consistent with the ordinary meaning of falsifies, which means essentially to make deceptive. It's the act of introducing falsity. He falsified the original. The duplicates are duplicates. He didn't falsify anything in the duplicates. Exactly. If there's any falsification in the duplicate, it might be the government's metadata. Yes, I think that's fair, Your Honor. And this is not to say, by the way, that he couldn't potentially violate some other statute by actually communicating the document to press. Oh, goodness, I'm sure there are many out there. I think there probably are. But for purposes of Section 1519, the only act of falsification was the creation of this document on his own computer in his own home. And that was the government's consistent position at trial. In its opening arguments, in the Rule 29 argument, the government quite consistently said that the falsification was when he went upstairs and he modified the PDF on his computer, and at that point, the offense was over. The situation in which someone creates a false document, but then never sends it, changes his mind. That person is going to be prosecuted under this statute. That's really fanciful. What is going to happen in the real world is that the person creates the document and then sends it. Your argument is that even if this had been emailed to San Francisco, emailed to a specific address of a person in San Francisco, there would be no crime. That is correct, Your Honor. And I think Johnson is the perfect illustration of why that is. In Johnson, the offense required using the mails for the purpose of sending or bringing into any state contraband. So there was similarly an intent requirement, much like there is here. It was even more closely tied to the interstate communication. And the court said, that does not change the venue analysis. We construe that statute to proscribe only the act of sending, meaning depositing in the mail. And once you've done that, the offense is complete. And so we don't care, really, that you did that for the purpose of sending something into another state, or even that you actually succeeded in doing so, thereby causing precisely the effect that Congress enacted the statute to proscribe. What about Lamar v. United States, where the court held the venue was proper in New York for a defendant who intended to defraud people located in the state? And the court held the venue was proper there, even though none of the defendant's conduct necessarily occurred in New York, and even though the charge defense did not require him to cause any fraud in New York. That seems like pretty much the same case as this one. I don't think so, Your Honor, because Lamar is, just like all of the cases that it was applying, conduct-based. The court, in a single sentence, says, he might even have been in the Southern District. But assuming that he wasn't, when he made phone calls, pretending to be a congressman, his impersonation, now admittedly, is a phrase that I know the government likes from Lamar, took effect in the Southern District of New York. And then Lamar cites Burton. And Burton very carefully conducts a conduct-based analysis to ask where the agreement, the illegal agreement there, was formed, relying on cases like Palliser and armor packing. So I think for Lamar to support the government here, it would have to be doing something completely different from all of the cases that came before or after it. The court did not know where he placed the phone call from. So let's assume he placed the phone call from Washington. From Washington, he calls somebody in New York and impersonates a government official. The court says, and the statute makes it a crime to intend to impersonate a government official. What's the difference between that situation and here, except for the fact that the technology changed? The difference is that there was not only a requirement to act intentionally to try to defraud someone there. The statute, as this court had just construed it a few months earlier, required some improper assertion of authority, almost a sort of overt act to actually manifest the impersonation. I know the government says that you could commit the actus reus by standing in front of your mirror in your bedroom, but this court had held that's not correct. That's not enough. You had to actually do something assertive, and the assertion there was the phone call. And the phone call, under cases like Palliser, happens on both ends. It happens where you physically are, and it happens where the person you're talking to is. And in that case, the person you were talking to was in New York. And so- Okay, I get your point. At what point in time do you think the intent that is required by 1519 has to occur? It certainly has to exist when you are falsifying the document. I think you have to have all three elements together, the knowingly, the falsification, and then the- So you can't withdraw from this offense for one half a second. Someone creates a false document, but never, I'm going to just create this, but I'm not actually going to send it. And then, for one second, he's tempted, I'll actually send this. And then he immediately says, no, that's the wrong thing to do. Too late? I think there, you would not have an offense, because you wouldn't have had the falsification with the intent to impede, which is what the statute requires to coincide. Now, admittedly, these are all pretty, I think, strange- Seriously, so he creates the false document, not intending ever to send it. So his intent at that time is not to do anything, not to send the thing. But later- Changes his mind. He says, now, I'm actually going to send it. There's no offense there, because he didn't have the intent to deceive at the time when he created the document? I think that's right, Your Honor. I mean, it's an unusual scenario, and I have a hard time imagining how it might ever come up. But the statute says you have to act knowingly, and you have to have the intent when you falsify the document. I'm not aware of any cases where the court has said that a later manifestation of intent that didn't exist when the actus reus was committed could satisfy a crime. But ultimately, though, even if you disagree with me about that scenario, I don't think it makes any difference here, because Mr. Abulamo undisputedly had all three elements at the same time when he created the document on his computer. And at that point, the offense was complete. And again, I don't take the government to actually dispute that. And so that makes this case just like Johnson, or just like Cabrales, or any number of other precedents where the court has looked narrowly at the essential conduct, the actus reus. Where did you do the thing that Congress proscribed? And the thing that Congress proscribed here was the falsification, which Mr. Abulamo did entirely in Seattle. And if the statute did require some kind of interference or obstruction, that would have happened in California. Is that correct? In San Francisco? I don't know if there's enough in the record to establish that conclusively, but it's certainly plausible. Okay. And if you had an intent to have that happen in San Francisco, this, I guess, goes back to the question of whether a mens rea element counts. But if you have the intent that the interference happened in San Francisco, that is enough or that's not enough? Intent alone, where the statute does not actually require an effect, is not enough, because that is the statute that we have here. And that's one- Because the intent is always where you are, as opposed to, I have an intent to make something happen in another place? Because the intent is where you are, and it's not conduct. And as I said, the court has always focused on conduct elements. But again, even if you want to look more broadly at elements, all of the elements were committed in Seattle. So you think Congress could, you just told Justice Kagan, intent unless intent to cause an effect. So you think Congress could say that venue lies someplace where you wanted there to be an effect flowing from your conduct, just as a matter of intent? If the effect is required for conviction, then yes. Don't you have to show that here? No. You just have to show that the- The intent, you have to, there are two different mens reas in the statute, right? There's the knowingly altering, et cetera, false fine. And then with the intent to impede, obstruct, or influence the investigation or proper administration of any matter. On that latter one, don't you have to show the intent to impede, obstruct, or influence? Yes, you do. What means an effect, intent to cause an effect, I think. Yes. What I'm saying is that Congress could create venue there in the place of the proceeding if the effect itself were required for conviction, not just the intent to cause it, but actually causing it. And that is- Why is that? Why are you making that distinction? Because in that situation, at least sometimes, the causing the effect is part of the actus reis that actually then satisfies the essential conduct elements. So if you- And I- Keep going.  I'm sorry. So I actually, I mean, I do think, honestly, probably the hardest question in this entire area, which this case does not implicate, is, is there a distinction between a statute that requires an effect for conviction, but seemingly as a standalone element, and then a statute that actually describes the actus reis in terms of causing an effect. But here, we're not in either of those scenarios, because an effect of any kind is not required for conviction. So the court does not have to get into that. My point is simply that there are some situations, certainly, where Congress could create venue quite properly for an obstruction-type offense to the extent that an effect, an obstructive effect or an impeding effect, is actually required for conviction, such that it is part of the elements of the offense. So the intent to cause an effect elsewhere is not enough to get venue elsewhere. So mailing a bomb elsewhere in the statutes written in terms of you put it in the mail with the intent to kill someone elsewhere, and that's all the statute is about. The elsewhere is not good enough. So I'm assuming in the hypo, the bomb doesn't go off. Correct. So I think, then, it would depend on the specifics of the statute itself, because- I don't think so. Under your theory, I think there's no venue in the other jurisdiction. So the reason I say that is that cases like, if you line up Travis, armor packing, and Johnson, you've got all three of those cases involve sending something from state to state, either in the mails or by shipping. And in one case, the court says venue only at origin. In another, it says only at destination. And in the third, it says anywhere along the way. And I think what that tells us, really, is you have to look very carefully at precisely the conduct that Congress proscribed. So I think it would be a little hard to answer that question without actually having the text in front of me. I think it's plausible that that statute could be written in a way that does actually reach past just where the person physically acted. Thank you, counsel. Justice Thomas, anything further? Justice Alito? There's a peculiarity about this case because the FBI investigation resulted in several other convictions. And you don't dispute venue for any of them, any of those others. You dispute venue only for his attempt to obstruct the investigation. So if venue is okay for the other charges, why doesn't it suffice for the charge that is at issue here? In other words, does the venue clause require him to face two trials and two venues for charges stemming from the same investigation? Have we ever held that? I don't know that this Court has ever squarely held that. But the Sixth Amendment, on its face, says that trials shall be held where the crime singular is committed. And I understand the courts always have read that, as it suggests, to mean that venue must be done on a count-by-count basis. Now, it doesn't necessarily mean that Mr. Abouamo has to be subjected to two trials. Of course, venue is waivable. That's his right. But it does mean that, absent a waiver on his part, each individual count has to be tried where it was committed. And I will note, that does not distinguish this case at all from Cabrales. Everything that you could say about why a trial in this case just makes sense in San Francisco could have been said in Cabrales as well, including other charges that were going to be tried there no matter what. Thank you. Justice Sotomayor? So, Congress did, in 1512C, require the government to prove that a federal investigation was impeded because of the defendant's conduct, correct? And it enacted a venue provision based on those effects, right? Yes. And so, those statutes exist. We have said the same thing, that Congress is free to look at effects, but we're not. Meaning, absent a congressional statute that permits venue in places other than where conduct is committed, we can't do it, correct? So, I think the right way to think about what Congress can do with a venue statute is that it can make sure that venue lies anywhere that an offense could be said to be committed within the meaning of the Constitution, but of course, it can't go beyond that. And so, certainly, there are ways to violate 1512 or 1503 that involve actual effects, and in those situations, venue would be proper either where the person physically acted or where the proceedings took place. And that's what they do? Yes. Now, with respect to Lamar, one of the elements of the Lamar charge was an overt act that required the use of a communication between people in the impersonation, correct? Yes. Some improper assertion of authority, which I think has to be communicative in some way. I think the statute used the word communicative, and so when the court on Lamar talked about the person in New York probably being Lamar's more proper venue because the communication happened in New York, correct? I think Lamar is basically just Palliser with a telephone call instead of a letter, yes. Exactly. Justice King? Justice Gorsuch? Justice Kavanaugh? How would you think about 1512I in this case? So on our view, and this is actually something that we have in common with the government because the government has this problem too, Section 1512I is unconstitutional in some applications. On our view, it is unconstitutional where it is applied to prongs of the statute where an effect is not required, and on the government's view, it's unconstitutional whenever an effect is not actually intended and manifested. So there's some daylight there, but I think actually not a huge amount. And so yes, that does mean that in some cases 1512I cannot be applied as it is written. What if he was interviewed in Canada, in Vancouver? So under the Constitution, Congress has plenary authority to decide venue for offenses that are cognizable under U.S. law but that are committed outside of the United States, and it has in fact done so. So I think there it might depend on, say, where he had been apprehended or brought into the country, but certainly there would be a place to have venue in the U.S. for that action. Constitutionally, but not under this scenario, this statute? Well, not under 1512I, but there are other venues. I'm back to 1519 now. So if he had done the same thing in Canada rather than in the U.S. Mm-hmm. So that, I mean, that I think there would be an extraterritorial jurisdiction question, which would implicate that. On your theory, I just don't think he could be prosecuted under 1519 if the interview had been in Vancouver rather than Seattle, right? If the offense were prosecutable at all, I think venue would not be an obstacle because it would be allowed under the provisions that govern where someone commits an offense outside of the United States. Okay. Thank you. Justice Barrett? Justice Jackson? So, would you encourage us to be thinking about this in terms of identifying this offense as not a continuing offense? Is that how we're supposed to... I'm just trying to sort out the cases that seem to suggest that there are circumstances in which a crime that is similar to this could be charged in different locations. And you've suggested that those cases are distinguishable on the basis of this continuing offense idea. And I haven't heard you mention that specifically in today's presentation, so I'm just trying to figure out where that fits. Yes. So I think armor packing tells us essentially how the continuing offense doctrine works in this context, and that is that where the essential offense conduct, so essentially the actus reus, continues or extends from one place to another, then venue is proper in each of those places. But where the actus reus is committed only in one place, venue is proper only there. So I don't deny that it is possible to violate Section 1519 in a way that would create venue in more than one state. If he had started creating the document in Oregon and then finished it in Washington, probably he could be charged for either of those. But here, all of the actus reus, the falsification, happened in one place. And that is what distinguishes cases like Palliser, Lamar, and armor packing, because in each of those cases, the actus reus, whether it was offering the bribe or it was impersonating a federal official or it was the illicit transportation, extended across state lines from one place to another. And you say even Lamar, I mean, demanding or obtaining is in the statute. Yes. So Lamar was charged. There are two prongs to that statute, one of which doesn't specifically require the demanding or obtaining. But this court had construed that first prong to require some sort of improper assertion of authority, and there it was the telephone call, was the improper assertion of authority. Thank you. Thank you, counsel. Thank you. Mr. Yang? Mr. Chief Justice, and may it please the Court, Petitioner falsified, knowingly falsified an invoice with the specific intent to obstruct an FBI investigation he knew was occurring in the Northern District of California. He then manifested that intent, manifested his obstructive intent and effected the investigation by transmitting the document to the FBI by email. That conduct, directed at and having a direct effect in the Northern District of California, makes the District a locus of his crime. The Constitution's requirement that venue be where the crime was committed looks beyond the physical location of the defendant and turns on the nature of the crime itself. And our position focuses on the special nature of a Section 1519 offense. It is an inchoate offense that, like conspiracy, is merely a step towards the commission of another crime. The offense has a special type of statutory intent element, not just mens rea, but intent, specific intent to commit another crime. Here is the obstruction. That necessarily contemplates, the defendant must contemplate that more must be done to achieve the objective that is required as part of the crime. The conduct that continues to manifest that intent by furthering that objective is part of the crime itself. And where that conduct is intended to produce and directly produces a detrimental effect in that District, the District is proper for venue. Petitioner's conduct manifesting his intent here, his transmission of the falsified record, is akin to an overt act in furtherance of a traditional conspiracy. That provides a basis for venue. Neither are elements, conduct elements of the offense. Both occur after all the conduct elements are completed, and both are taken to further the intent element objective of the crime, that is the ultimate commission of this other offense. Petitioner's view that venue is proper only when an essential conduct element occurs cannot be squared with the settled rule that venue is proper for conspiracy in any District where any overt act occurs, even though the overt act is not an offense element. The same venue rule applies here. Well, Mr. Yang, this is not conspiracy. So, could you, is there anything that is done by Petitioner in California? He drafted the invoice in Seattle, and he transmitted the invoice from Seattle. Now, there's nothing left but the receipt by the FBI. We don't dispute that his conduct and the offense itself was completed and could have been prosecuted before he hit the email. We're not disputing that. Our point is somewhat different, which is even though when offense elements have been all satisfied, there's conduct that can still occur that is furthering the specific intent to commit the other crime. What is that, precisely? Well, that was the emailing. But he emailed it, he transmitted it from Seattle. But it was directed specifically at the Northern District of California. He knew the agents were conducting an investigation there, and that is where they're from. It's no different than pointing a gun and shooting. He shot the email, and he hit Northern California. And so, but our, the main point, I think, is that offenses, the relevant offense conduct, where the crime is committed, can encompass things that happen after the crime can be fully prosecuted. And that's true both with conspiracy and with respect to intent, both include crimes that share an essential feature with this crime, which is there has to be specific intent to commit another crime, such that the inchoate crime is a step towards that further crime. Mr. Yang, I gather it's common ground between the parties that this, the vicinity clause was added because of Parliament's decision to allow the transport of colonists back to England to be tried there. So, under your interpretation, that would still be allowed, right? The Boston Tea Party takes place entirely in Boston, but it causes effects back in England, and so why can't you say it's all right to take them to England? I don't think that that's quite right. We're not saying that any kind of incidental effects or kind of dignitary effects that might affect the government would cover it. If that were true, any offense against the United States could be tried in D.C. I don't think the whole point of it, Theresa, I'm sorry, is aimed at the king, right? I mean, it wasn't incidental, I think is what the Chief is, let's hypothesize. The aim at the king is a slightly different thing. If you might, if you might, let's work with my hypothetical. We have a crime whose intended effect is the king in England, okay? It's certainly how the framers thought of it themselves when they were in the revolution. They were aiming at Parliament and the king, and they wanted to depart from them. And the crown did want to try them in England, and that was considered an infamy that led to the Sixth Amendment. And I do want to answer the Chief's question. Assuming, hypothetically, that the founders were aiming at the king and Parliament, and that was their intended effect, could they have been tried in England under your theory? No. The offense needs, our theory turns on a specific feature of this type of crime, which is that you have to specifically intend, as an element of the offense, to commit another crime, you know, here's the crime of obstruction. So if it were an inchoate offense in America then, okay, a conspiracy offense, an inchoate offense, then they could have been tried in England. No, this is, I think, no. I want to just take a step back. They rely on Blackstone. Blackstone explains there are seven types of branches of conspiracy. The relevant branch for the colonists would have been taking up arms or waging war, right? The element that they talk about is the first branch of conspiracy. That is where you actually act with the purpose or design to kill the king, literally kill the king. That is a different type of offense. And if you have the overt acts, let's say you actually bring supply arms or your people go to strike the king, even if you were in the United States and they struck the king in England, yes, I think you would, as a co-conspirator, as part of that, would be able to go there. But that's not what the colonists were upset about. The colonists were upset about actions taken here that have direct effect here, that the only connection was some kind of vague dignitary offense of treason. That's different. I don't think that's how King George took it. I mean, saying the Boston Tea Party was concerned with effects here, I mean, it was intended to send a very specific message to London that we don't want our citizens picked up and taken away. And then they enact a clause in response to that that would prevent precisely that from happening. Well, I'm not talking about what might have been in the mind of the king. I'm talking about what the law required. And what the law required was there were different types of treason with different elements. And what they're talking about, about striking the king, literally meant killing the king. That was the offense. It was like attempted murder on the king. Look at Blackstone. It spells out the seven branches. They're relying on something different here to conflate the idea of what we have, which is based on the idea that inchoate crimes like conspiracy or attempt can continue beyond the point at which the crime can be prosecuted. Mr. Yang, isn't really the point of the Chief and Justice Gorsuch's questioning that this clause, the law, the way in which the Constitution developed around this issue was a concern that people were being removed from the area in which they had committed the essential elements of the crime and taken back to England. The government was, or the crown was gaining or thought they would gain an advantage by trying them back there rather than here in the colonies and then later here in the United States. And so the concern, I think, with your theory is that because the government controls the location of the investigation, you would end up with the same kind of troubling dynamic that the essential elements of the crime, you admit in terms of the act dis reis, is happening in one location. But to the extent that the person intends to affect an investigation of the United States, the United States says, well, our investigation was happening in San Francisco or New York or wherever. We don't say it. Or it was. It preceded. No, it preceded his crime. But you can learn that. But what I'm suggesting is that you control that. So here's a hypothetical. Suppose that in this very same situation, the United States had decided that 1519 crimes are best prosecuted by the Southern District of New York because they have the most experience, because they think they do better, those prosecutors. But the underlying issue, all of the alleged foreign interference and espionage and whatnot that Mr. Abouama was allegedly engaged in happened in San Francisco, and the United States sends New York-based agents to his home in Seattle because they're the ones that are doing the investigation, and the same set of facts ensues. Is your view that then you would be proper in the Southern District of New York? If the agents were, instead of being in San Francisco, they were in New York? Yes. They're from New York. Yes. The Southern District of New York. And he knew they were from New York, and he still transmitted it to New York. Our position would be- But transmission is not in the statute as a statutory element. Right? I understand that. The statute that I'm positing is the same, that all he has to do is falsify the document and intend to do so, the falsification, where he is. Our position is that his relevant conduct for purposes of determining where venue is appropriate continues beyond the completion of the crime, just as- There's no continuation here. It's just the New York agents in his living room, and you're saying-  I just want to be clear. You're saying the United States could try this person in New York because the investigating agents are from New York, even though all relevant conduct in terms of the statute occurs in Seattle. Yes, because he intended to and specifically did affect the investigation in New York. Let me explain- That doesn't matter. Let's see. How important is this continuing intent to your argument? Are you saying that- Let's imagine he didn't email it. He just creates it in his house, and that's it. You've said that that would violate the statute, right? It would. Okay. It would. I mean, as a practical matter, we might not be able to ever prosecute it. Well, right. But you're saying it would. It would violate the statute. So tell me how your venue theory works there. It wouldn't work there. You always have venue where there's an actus reus, right? We know that.  So you could prosecute it in Seattle. The question is whether you could also prosecute it elsewhere. Crimes aren't always committed in one place. But doesn't he intend- Okay, so the agents show up at his house. He knows they're investigating in the Northern District of California, so when he falsifies the document and he's intending to obstruct the investigation, he knows where it's going on. It's just that he puts it in his drawer. Why would your theory be any different? Our theory relies not only on the intent. We're borrowing from Ford's explanation of the court's venue cases, right, including Lamar. Ford explains that when acts are done outside a jurisdiction but are intended to and do have a detrimental- And do. And do have- But the statute doesn't require that, right? None of this is part of the statutory elements. Okay. Our position- We are accepting that the elements of the offense were satisfied upon falsification. He made it on his computer. We could have prosecuted if we knew about it. We would never know about it. Yes. Yes. Our position is that further action that furthers the intent, that seeks to have that intent fulfilled- Remember, the intent is actually to obstruct. You cannot just falsify a document and obstruct- So, Mr. Yang, if I understand you correctly, you're saying that Mr. Lasekins is just using the wrong test. If he tells us, look to essential conduct elements, you're saying, you agree, if you look to essential conduct elements, he wins. You shouldn't look to essential conduct elements. And then you're also saying it's not enough to look to just the intent of the person, because the intent of the person- I mean, tell me if I'm wrong about this, but is that- Why don't you tell me that first? I think that's right, but- You think it's right that that's not enough either? I'm sorry, but I just wanted to say this- The person has an intent to obstruct an investigation. That still is not going to get you venue where you want venue. That's not a theory, yes. So, what is going to get you venue where you want venue? Because now we're looking outside the statute itself. I don't think so. You're understanding what the nature of the crime is. Ultimately- What's the nature of the crime? I mean, the nature of the crime, we usually think, is like what the crime requires the government to show. It's the elements of the crime. Let me give you two examples. You can have a conversation about whether the elements include only conduct elements or also include mens rea, but you're trying to get us to look to the statute and devise a crime that doesn't appear in the statute and then say, oh, if you think about that crime, we'll have venue in California. Let me give you two examples, and they're both in the NCOET context, because I think that's important. Remember, NCOET crimes that we're talking about are crimes where you have, as an element, the intent to commit another crime. And you know the crime is not- Your NCOET crime is not sufficient. More needs to be done because you haven't completed the crime. That's the premise. There are two other examples. Conspiracy. Traditionally, the actus reus is the agreement. That's it. The intent is reflected in the agreement to commit another crime. As soon as you form that agreement, right then, you can be prosecuted. But- The conspiracy, Mr. Yang, though, is we impute the actions of your agents to you, and this isn't a conspiracy statute. That's different. That's actually a different- Mr. Yang. I would just try to- Mr. Yang. Thank you. If you would answer Justice Kagan's question without respect to conspiracy and limit yourself to NCOET offenses, that would be helpful to me, and I think probably to her, and maybe even to your client. Well, NCOET offenses include inconspiracy. They also include attempt. Let me give you an attempt example. In Rescindes Ponce, the court recognized that you can have multiple substantial steps. What you need for the elements of an attempt crime are intent to commit the other crime and a substantial step towards it, right? So in Rescindes Ponce, the court recognized there can be multiple serial substantial steps. At the first substantial step, the crime can be completed, right? I mean prosecuted. You have a substantial step, you have intent. But it continues. Why? Because the idea of the crime is you're trying to do something more than just the attempt. You're trying to complete the other crime. So if you take another substantial step, that is also going to be a basis for venue, even though you could have already prosecuted. It's because the idea of the crime is you're trying to commit another completed crime. If you make an agreement with others, it's the same thing. You could be prosecuted as soon as the agreement. No actions over actions traditionally defined as conspiracy have to occur. But if they do occur, if you try to manifest your intent, further your intent to achieve your objective, they're still considered part of the crime, even though they're not defense elements. That's the whole point, both for attempt and for agreements. You have the same thing. We say it's the same thing here, where there's an inchoate crime with intent to commit obstruction of justice. Can I have some clarifying? Go ahead. Go ahead. Justice Alito? All right. And we're still focusing on intent. We're still focusing on elements, but we're just focusing on how the statutory intent element was a special, not just mens rea, but like intent to commit another crime, something specific, how that gets manifested as part of the crime. All right. I just want to try to put this in perspective. So this is an unusual statute, and it was enacted in response to Enron. Is that right? It was. And it was the part I should – I can't recall this precisely. Was it part of the same act that included the statute that we had in Yates? It is the same statute. Oh, I'm sorry. It's in the same – yes. Yeah, right, with the fish and tangible objects. So it was enacted under circumstances where there was kind of a panic about Enron, and maybe Congress didn't draft things as precisely as it should. So, I mean, you're trying to defend this particular conviction, and I understand that. But maybe when you're told that what you're doing is a violation of the Declaration of Independence, you might think about what seems to me the more important point for lasting significance is the situation where there's an intent to commit a fraud and the transmission of the document that would carry out the fraud. That seems to me to be the important point. And to say that in that situation there would not be venue in the place to which the document was transmitted would be of quite a bit of importance. So maybe you could talk about that. I think that's really not that different from what we're saying here, because when you have the statutory intent component that you have to commit another crime, the whole nature of the crime is a step towards, an effort towards completing the other crime. So things that complete the crime, things that complete the obstruction like the transmission, when it's directed at a specific place it actually has an effect there is properly considered part of the crime for purposes of venue. That is our position. And it's a little bit shocking that you can have this specific intent as an element that we prove. No doubt, he's intending to obstruct this investigation in the Northern District of California. And he shoots off his email, just like shooting a gun in the Northern District of California to achieve that objective. And venue is not proper in the Northern District of California. It's a surprising result. Mr. Chang, how do you account for Cabrales if you're right? Why doesn't that case come out differently? Thank you. Cabrales, this is over two pages of the opinion, they emphasize, the money laundering there is committed after the fact of the early drug crime. It's a backwards looking. We have a forward looking. But wasn't the government's argument in that case that it was related? Whether it was after it temporally, they connected. I mean, this is why the government said we can do this in Missouri because the money laundering that she engaged in in Florida is connected to... And Cabrales says the test is not related. But Cabrales does not say, here we have a different offense. There the relationship was backwards. It was completed by others in Missouri. There was a money laundering offense that was not looking back. It was after the fact related to it. So Mr. Chang, let's do it with a forward looking one. How do you distinguish Johnson? There the crime. I never knew there was a federal denture act. Yes, there was. Okay. Which made it illegal, quote, to use the mail to fabricate a document for the purpose of sending or bringing it into another state. Any denture prepared by the person, not licensed to practice dentistry, in the state into which the denture is sent. And we said, in that case, that purpose or intent to do an act is not measured by the final destination where the dentures were received, which, by the way, is the only place where the illegality could have happened. But that only sending the item from Chicago qualified as venue. Seems that that statute is completely comparable to this one and talks directly about intent not being adequate to house venue. We think that Johnson is different in an important way. The nature of the offense was understood to be simply placing it in the mail with the idea that it's going to go forward. But nothing further had to be done. You told me that the nature of this offense is the creation of the document with the intent in Chicago. If he had never mailed it, he would still be guilty. That's what you told Justice Kagan. The offense here, it's not just any kind of mens rea. It's a specific intent to commit a further crime. There are more things that have to happen for that further crime to happen. It has to come to the investigation to obstruct the investigation. You don't have to prove such objection. You didn't have to prove anything about the other state. Well, you did have to. That's why our position is that the actual conduct but conduct that is manifesting the express intent element to commit another crime by advancing, trying to commit the other crime is part of this offense. That is different from Johnson because in Johnson, the court is simply placing the thing in the mail and you're done. But here you just make the document and you're done. I just want to be clear that I understood when we were talking before and when you were talking to Justice Kagan that you're conceding that Venue would not lie if he had the intent to obstruct the investigation in San Francisco and created the document harboring that intent and put it in his drawer. You said, I think, correct me if I'm wrong that Venue would not lie in California. Yes, but the difference is when you do have additional conduct which is manifesting the intent in order to achieve that further crime the obstruction which you need to I guess I just want to know I thought your theory was about where you intended the effects to occur so why isn't Venue sufficient in California if he just put it in his drawer? Our theory is that you not only have to intend it but you actually have to your action has to produce it. So your action has to actually produce the effect? Produce the obstruction or something close to it. Well, presumably he could have been prosecuted under an obstruction of justice statute then. Well, he could have as well as under the intent. Would it have been different under your theory if he had airdropped the document to the FBI agents as opposed to emailing it? I don't use airdrop but I think that's an Apple product that you upload it somewhere. Yeah, are you an Android guy? I'm an Android guy. I'm sorry. I'm really sorry. I was an old engineer. It just means that you send the document and it's not emailed. It goes over the home internet. Yeah, it shouldn't matter. The ultimate destination that you're intending to get to is what matters. The fact that it might be on a server somewhere what you're trying to do is send it to the FBI agent that you know is investigating in Northern District of California from Northern District of California. You have to know that the investigation is taking place in that district. Suppose you just know that there's an investigation some place out there that is taking place. You intend to obstruct it. You intend to cause these effects wherever this investigation is occurring. What then? Our theory is that a crime has committed under 1519 there is a crime, but our theory of venue would not apply. The only venue you would be able to prosecute there is where the Actus Reis is. Where is that in the statute? I keep on looking to the statute to try to figure out how it's connected to your theory of venue and the answer is it's really not. I think the connection to the statute is through the statutory intent element. Remember, you have to specifically intend to commit the other crime. You have to specifically intend to obstruct justice and that's the same as within COA crimes generally. When you intend to commit a further act, a further crime, there's more things that have to be done. If you take those other things after your first substantial step in an attempt or after the forming of the agreement, which is the crime, by the way, and conspiracy, but through an overt act, those things count for venue because it's part of the overall offense conduct as construed. We think that's the same thing for 1519 because of the statutory intent element. I'd like to also clarify a few things about 1512 and Lamar. He just shredded documents in his house. What's your theory? That would be an offense. I got that. Right. We would not be able to art a theory, again, based on Lamar's. Just where could he be prosecuted? Well, that would have to be in Seattle. Even though he had the intent. Because on the text of the statute, I guess to follow up on other questions, I thought it was conduct with the intent to cause an effect elsewhere. Conduct in one place with the intent to cause an obstructive effect elsewhere. And I thought your theory might be you could be prosecuted in either place. I'm sorry. Destruction is a little bit weird. Destruction of a document. That's a harder question because it is unlike where you're actually affirmatively placing the document into the investigation. And so I think our position would be a little harder. We might well argue that that would be covered, but I think it would be But your theory, as articulated here, wouldn't cover it, I gather. Yes, I think Let me just make sure I'm clear on what your theory is not. Your theory is not that conduct in one place with the intent to cause an obstructive effect in another is good enough to prosecute you in that other place. You also need to actually produce an effect at the other place. This is how the court understood venue decisions. So why isn't shredding doing it? What if these agents arrived at his house in Seattle looking for a document that he had upstairs and he threw it in the shredder when he went upstairs instead of creating it? I don't understand there to be under your theory a material difference between placing a falsified document into the investigation versus removing one from the investigation from the standpoint of your theory. So going back to what Justice Kavanaugh just said, I'm now completely baffled as to what your theory is doing. I think the difference is, and we may well argue that that's covered, but there is a difference which is when you are sending it to the Northern District of California you know it's just like shooting a bullet. No, he knows because the agent from California arrived at his house saying we're doing an investigation and you know what? We have one piece left. It's a document that we cannot find. I understand. We would likely run that argument that there may not be a problem. He knows that the California investigation needs the document that he is hiding. Now I appreciate this is about falsification, but in my hypothetical I don't understand why his intent to withhold or remove or destroy this document wouldn't count under your theory. It may. But it's different. Our case is easier here because he's doing something affirmative as opposed to preventing something from getting to the investigation. There is a distinction. We may well argue that destruction of documents where you specifically know where you're preventing it from going Alright, go ahead. If you lost this case and we didn't want to rule out the hypothetical that Justice Alito gave you about fraud where it arrives somewhere else it seems to me that we would not rule out that scenario if we simply looked at the statute and said the crime was complete when he created the document and it was irrelevant For purposes of the statute, that he emailed it to the agents, that leaves open the question that Justice Alito said which is the more significant one. Yeah, I think if you were to construe what the nature of the crime is and say that there's nothing beyond, that's true that would distinguish this case for instance from 1512I because 1512I's venue provision the express venue provision applies to attempted obstruction 1512C2 which Justice Sotomayor was talking about does not simply address affected obstruction. It also expressly provides attempts to obstruct so it's the same kind of situation we have here. This is like a specific means of attempt so if Congress in 1512I specifically is telling you what the offense is and that's different from this case, that would be if you reserve that then you allow for Congress to define the offense because Congress has a lot of authority to define offenses Thank you Counsel. Justice Thomas, anything further? Justice Alito? Justice Sotomayor? Who decides this additional element that's not in the statute that you have to intend to produce an effect in a particular place? It's not an element It's not an element of the offense So how do we, who decides it? The case law I thought that we had a case not so long ago about what happens if an element is not submitted to a jury There's a distinction There is a question about what offense conduct creates a crime Are there elements? We're not saying this is an element Just answer my question, who decides that issue? Well you decide what elements of the offense are by screwing the statute but our position is not that this is an element Our position is that the crime that is committed when you understand what the crime is This crime doesn't have to be limited to offense elements We know that from conspiracy But when you read a charge to a jury that a crime was committed in the Southern District of New York If a defendant says this crime wasn't, we usually say to the jury tell us whether it was committed in New York or not We don't let the judge decide it generally So this is now a new step in this venue No, if there were in this case, there was no request for jury instruction. If there's not a request for jury instruction and jury finding there is no need for it. But you could in a future case if you requested it. They just didn't request it Thank you Justice Kagan? Can you tell me, Mr. Yang, what the difference is between your theory and the Ninth Circuit's theory? The Ninth Circuit, I think, isn't focusing as much on the doctrinal basis of having an intent and an effect in the district I think they were just looking at the statutory intent element but weren't fleshing it out Ours is a refinement. We don't think our position is that inconsistent at least in the context of this case with the Ninth Circuit They didn't have the same briefing as you have here in terms of fleshing out the significance of the statutory intent element and what that means for the nature of the crime that is committed when you're analyzing the venue Thank you Justice Gorsuch? 1512I, your friend on the other side suggested that you think part of that might be unconstitutional and I didn't think that was correct and I want to make sure that's not correct There is a question about whether 1512I, certainly the prong that's relevant is, and this is reproduced at page 32 of our brief in the first paragraph towards this bottom third venue is proper in the district in which the official proceeding whether or not tending or about to be instituted was intended to be effected So that is an intent like you have to intend the district to be effected So that is arguably, you could read that one of two ways You could say all that's required is an intent your focus, you know it's happening in the Northern District of California, you intend it, that's enough That's different than our position here Correct, I got that 1512I, that's enough, right? Yes, you get to make this call but I suspect we will defend that as a constitutional exercise of defining crime, but you could also construe that, if you look at the legislative history, which we cite later on the page they talk specifically about killing a witness in Maryland where the prosecutor who was scheduled to testify in DC and then we don't quote this part, but it says they're providing jurisdiction where the obstruction is felt that evokes the question of whether actually the effect is required and so there's an interpretive question, if you interpret it only to acquire intent, it's different, we still would defend it but you could also interpret it to be exactly what we're saying here which is you intend and have an effect in the district And then, if you do not prevail in this case, obviously one of the concerns in writing the opinion will be ripple effects here's your opportunity to tell us in the event you don't prevail what you're concerned about for the next case you've covered a little of that with Justice Alito I think this really comes up a lot in these kind of inchoate crime types of theories, particularly in the context of obstructions of justice attempted obstructions of justice so chapter 63 which you discussed at some length in Tugan I think Congress has specifically addressed venue for purposes of 1503 and 1512 and 1512i but there are other provisions where there are inchoate attempt crimes there too Our view is that because Congress was simply resolving a circuit conflict in the favor of the majority just clarifying where the offense was that should be understood you have to construe 1512 or excuse me, 1519 in the corpus of that body of law and construe it similarly now, it's possible you could construe it differently and if that's the case then our argument would not get us to home but if you were to simply construe this provision Congress hasn't spoken to the nature of the offense as it has done in 1512i with respect to 1503 and 1512 that would leave open the door for Congress to clarify speak more clearly with respect to where it thinks these inchoate crimes take place It's a clarifying question that I hope is very simple Did I understand you correctly to say that you don't think the intent to cause effects is enough to create venue in the place where the actus reus occurred Not on this statute because unlike 1512i But it would under 1512i Intent to cause effects is enough If you view 1512i as only requiring just the intent not the effect then we would say yes that would be a sufficient basis for venue so this case has both constitutional questions and it has statutory questions and the two are always intertwined because the question for venue is where is the crime committed but the question of what the crime is requires understanding what Congress intended for the crime We know this cannot be the case The crime is more than the offense elements We know that to be the case from conspiracy Conspiracy, Justice Gorsuch is right Conspiracy is a different kind of crime It is continuing and then you can be prosecuted for any of the acts within the scope of the conspiracy committed by your co-conspirators The Pinkerton liability point is important What it does is it sweeps in actions that you don't do because they are of co-conspirators but it doesn't change the nature of the encoded offense. The reason that offense continues is because it's not an agreement to just say we're coming to an agreement It's an agreement with specific intent to do more, to commit this further crime. That's the same thing that we have here. One other question Has the statute of limitations on this offense expired? I actually don't know If you're asking whether we would retry him, you know that decision has not been made but I'll give you one fact that may counsel against it which is he was sentenced to 42 months of imprisonment for all 6 of his offenses including this. There was a sentencing error that the 9th circuit remanded for and so even though upholding all the offenses it went back for resentencing and by that time he'd already served all 42 months including the sentence for this crime. So in terms of practical retrial that would weigh as a factor that we would consider Justice Jackson In the case of U.S. v. Rodriguez-Moreno in 1999 footnote 2 we noted that the government argues that venue may also be permissibly based upon the effects of a defendant's conduct in a district other than the one in which the defendant performs the acts constituting the offense and we went on to say we express no opinion as to whether the government's assertion is correct so here today do you at least concede that you're asking us for a new rule? We don't think it's new because we think it's rooted in No but the court reserved it in this prior case and said we express no opinion as to it so today you're asking us to apply or to adopt the rule that you previously offered and that we express no opinion on Yes but just because Rodriguez-Moreno didn't express an opinion on doesn't mean that there aren't prior cases that speak to the issue like Lamar, like Ford, which in extraterritorial context which the question is basically the same which is did the offense occur in the jurisdiction As of 1999 the court had not understood itself to have answered that question and the government was offering it and we said we're expressing no opinion, correct? No, I think that's over reading it Expressing no opinion is different from saying we haven't resolved the question It's just not resolving it Thank you counsel Mr. Lawson in rebuttal I think my friend really hung his hat on the analogy to conspiracy His silver bullet in his view is that you can be tried anywhere an overt act is undertaken further to conspiracy even for conspiracies where an overt act is not an element and the problem with that view in addition to the points that various members of the court have made about conspiracy being a unique ongoing collective enterprise is that if you look at the cases in which the court adopted that rule for conspiracy it did not think about it at all in the terms that my friend is describing In Hyde in 1912 the court first allowed venue for conspiracy where an overt act was committed even though the conspiracy was formed elsewhere and there an overt act was an element but the court explained the integral role of the overt act in giving the conspiracy life and continuing it forward and it quoted a New York case from the 1830s that said wherever the conspirators act there they renew or perhaps to speak more properly they continue their agreement so in allowing venue based on overt acts the court conceptualized the overt act as itself being the agreement in a real sense because an agreement without any overt acts really doesn't matter, it doesn't do anything and so then in Trenton Pottery and Saucony Vacuum which are the two cases that the court was summarizing in which field, which the government cites so many times in its briefs, the court then applied Hyde to conspiracies where an overt act was not an element, essentially with no real analysis beyond saying yes that's still true here in Saucony Vacuum the court said that the overt act supplied part of the continuous cooperation necessary to keep the conspiracy alive so I think it's very clear from those opinions that the court conceptualized of an overt act whether required as a standalone element or not as being part of the actus reis of the conspiracy itself and it was on that basis that the court allowed venue and of course here that is not true for the effects that the government is vaguely asserting happened in San Francisco beyond that my friend returned a few times to the analogy of someone aiming a gun from Seattle at San Francisco and pulling the trigger to the extent Mr. Abdullama was aiming anything at anybody it was at the people who were sitting in his living room in Seattle whether the investigation was ongoing in San Francisco or anywhere else I suspect was probably not top of mind there were federal agents sitting in his living room in Seattle and he wanted them to go away and so to that extent I think Justice Barrett it is the same as the airdrop analogy of printing out the paper and handing it to them his conduct was in Seattle and it was directed at people who were in Seattle nor is conspiracy an inchoate offense in any other way the literal dictionary definition of an inchoate offense is solicitation attempt conspiracy this is none of those this is not an attempt offense because it applies only to a specific kind of conduct and not to a substantial step of whatever type and it's not an attempt offense because it doesn't incorporate any objective offense whose elements you would have to think about and I do think that distinguishes a lot of the hypotheticals that the court asked about Justice Alito the hypothetical that you raised about fraud that is attempted to be committed by transmitting a document I think under most of the fraud statutes and certainly once you start thinking about attempt there's no problem with venue there on our theory as long as that transmission is part of the actus reus that you're talking about and for an attempted fraud it would be because that would be a substantial step it might even be fraud itself depending on what the effects were so I don't think those kinds of situations are implicated I do also want to emphasize of course all we're talking about here is where this crime can be tried there's a temptation sometimes you're talking about these issues to think that we're trying to immunize the conduct from prosecution that is not what's going on here all we're talking about is the appropriate place of trial and that is where the offense was committed a lot of the court's questions I think underscore the problems with the government's rule I think you know fully 80% of the questions that I heard were just trying to figure out what the government's rule is how it works and what relationship if any it has to the statutory text and I think Mr. Yang's answer is underscore that it is deeply unclear the relationship to the actual statutory text and elements is extremely attenuated and as you were getting at Justice Sotomayor it's very unclear how it would actually work the fact that the government wants you to rely on to uphold Mr. Obama's conviction here were not charged in the indictment and they were never found by the jury on what basis then can you uphold the conviction even on the government's theory and even if you adopt that theory for future cases does that mean the government now has to charge those facts in the indictment and prove them at trial it is a much simpler approach that will do no violence to the law simply to say what the court has always said we are looking to where you committed the essential conduct elements of the defense and here all of the essential conduct elements were committed in Seattle thank you counsel the case is submitted